UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT PARKER, | ) | Case No. 4:07CV1185 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | MEMORANDUM ORDER AND OPINION |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

Robert Parker ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts that: (1) the Administrative Law Judge ("ALJ") erred in applying the principle of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), in denying his application for SSI; and (2) the ALJ erred in failing to grant substantial weight to the opinion of his treating physician. For the following reasons, the Court AFFIRMS the ALJ's decision.

**I.** **PROCEDURAL AND FACTUAL HISTORY**

An undated ALJ decision shows that ALJ Robert Isbell denied Plaintiff's July 27, 1999 application for SSI wherein he alleged disability beginning July 27, 1992. Tr. at 36-47. The ALJ found that Plaintiff had the severe impairments of degenerative cervical disc disease, status post C5-6/C6-7 anterior cervical discectomy and fusion surgeries, depression and pain disorder associated with

1

psychological factors and a general medication condition. *Id.* at 46. However, the ALJ found that none of these impairments, individually or in combination, met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to lift/carry up to twenty pounds occasionally and ten pounds frequently, but he could not work at unprotected heights, or climb ladders, ropes or scaffolds, and he was limited to work involving low production quotas and limited interpersonal contact. *Id.* He also found that Plaintiff was unable to perform his past relevant work as a machine operator, but he could perform a significant number of unskilled jobs in the national economy at the light and sedentary exertional levels. *Id.* Accordingly, the ALJ found that Plaintiff was not under a disability and was therefore not entitled to SSI. *Id.* at 46-47.

On December 19, 2003, Plaintiff filed a second application for SSI, this time alleging disability beginning January 1, 2003. Tr. at 62. The SSA denied Plaintiff's application initially and on reconsideration. *Id.* at 50-57. Plaintiff requested a hearing before an ALJ which was held on August 15, 2006. *Id.* at 58, 273. Plaintiff's counsel attended the hearing, and Plaintiff and a vocational expert testified. *Id.*

**II**.   **SUMMARY OF RELEVANT PORTIONS OF ALJ'S DECISION**

On October 20, 2006, ALJ Carissimi issued a decision denying Plaintiff's application for SSI. Tr. at 15-22. In doing so, ALJ Carissimi found that he was bound by the findings of ALJ Isbell because he found that the record did not support any further limitation in Plaintiff's RFC since that time. *Id.* at 16. ALJ Carissimi relied upon the decision of *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), in which the Sixth Circuit held that *res judicata* applied to administrative proceedings and found that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is

bound by the findings of a previous ALJ." *Id*. at 15, citing *Drummond*, 126 F.3d 837. Finding that the record did not support any further limitation in Plaintiff's RFC, ALJ Carissimi adopted the findings of ALJ Isbell. ALJ Carissimi stated that Plaintiff had the severe impairments of status post cervical spine fusion, degenerative disc disease, and dysthymic disorder, but these impairments did not meet or equal any impairment in the Listings and Plaintiff retained the RFC to lift/carry up to twenty pounds occasionally and ten pounds frequently, and he could stand and/or walk six hours of an eight-hour workday. *Id*. ALJ Carissimi further found that Plaintiff could not work at unprotected heights, or climb ladders, ropes or scaffolds, and he was limited to work involving low production quotas and limited interpersonal contact. *Id*. He also found that Plaintiff was unable to perform his past relevant work as a counter maker, but he could perform a significant number of unskilled jobs in the national economy at the light and sedentary exertional levels. *Id*. ALJ Carissimi thus found that Plaintiff was not under a disability and was not entitled to SSI. *Id.* at 22.

Plaintiff requested that the Appeals Council review the ALJ's decision and his counsel provided written argument. Tr. at 10, 269-272. The Appeals Council denied this request, finding that the arguments did not provide a basis for changing the ALJ's decision. *Id.* at 5.

Plaintiff filed a timely appeal to this Court on April 22, 2007, and Defendant answered. ECF Dkt. #s 1, 12. Both parties have filed briefs addressing the merits of the case. ECF Dkt. #s 16, 18. At issue is the decision of the ALJ dated October 20, 2006, which stands as the final decision. Tr. at 15-22; 20 C.F.R. § 404.984.

### III.     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

    1.     An individual who is working and engaging in substantial gainful activity will

-3-

> > not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));
>
> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if

substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### V. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred in relying upon the principle enunciated in *Drummond* when he adopted the prior ALJ's findings because new and material evidence demonstrated that Plaintiff's conditions had deteriorated such that a new determination of his RFC was necessary. ECF Dkt. #16 at 8. Plaintiff cites to evidence of a May 29, 2002 MRI of the cervical spine showing that Plaintiff's neck impairment had deteriorated since the last MRI upon which the prior ALJ had relied. *Id*., citing Tr. at 164. He also points to doctor examinations and Dr. Kim's medical records supporting a deterioration, as well as a June 28, 2006 EMG and nerve conduction study showing mild cervical radiculopathy affecting the C7 nerve roots. *Id*. at 9, citing Tr. at 165, 167, 169, 201-203, 205-208, 241-244, 265. Plaintiff also refers to his testimony that he is no longer able to walk the distances that he could in the past, which he believes, coupled with Dr. Kim's medical records, supports a deterioration in his condition. *Id*., citing Tr. at 280-281, 287. Based upon this new evidence, Plaintiff posits that the second ALJ was required to perform his own analysis of Plaintiff's RFC and could not simply rely upon *Drummond* in order to deny Plaintiff's claim. *Id.*

The Court finds that the ALJ in this case did not err in relying upon the principle of *Drummond* in this case. In *Drummond*, the Sixth Circuit Court of Appeals held that "[a]bsent

evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842. The Court further held that the Commissioner shoulders the burden of proving changed circumstances in order to escape the application of res judicata. *Id.* "In other words, the Commissioner may not make a different finding in adjudicating a subsequent disability claim unless new and additional evidence or changed circumstances provides a basis of a different finding of the individual's residual functional capacity. *See* Social Security Acquiescence Ruling ('SSAR') 98-4(6), 1998 WL 283902 (June 1, 1998)." *Farmer v. Astrue*, No. 3-07-cv-175, 2008 WL 343254 at *6 (S.D. Ohio Feb. 5, 2008).

In this case, ALJ Carissimi reviewed the prior determination of ALJ Isbell and discussed *Drummond*. Tr. at 15. He noted ALJ Isbell's findings of Plaintiff's severe impairments and the RFC that ALJ Isbell attributed to Plaintiff. *Id*. He also cited the medical evidence that ALJ Isbell relied upon in making his determination. *Id*. He thereafter found that, based upon the record before him, no further restriction as to Plaintiff's RFC was necessary and his findings were consistent with that of ALJ Isbell. *Id*. at 16. In doing so, he reviewed the medical evidence in the record from the date of ALJ Isbell's decision through the date of his decision. *Id*. at 18. He found that the objective medical evidence failed to establish a significant change in Plaintiff's physical condition since that ALJ Isbell's decision. *Id.* at 20.

Substantial evidence supports this determination. ALJ Carissimi cited to the only cervical spine MRI taken after ALJ Isbell's decision. Tr. at 18, citing Tr. at 164. ALJ Carissimi noted that the May 29, 2002 MRI results compared to Plaintiff's 1996 MRI results indicated that the degenerative changes in Plaintiff's cervical spine were essentially unchanged. *Id.* The 2002 MRI also noted some narrowing of the left-sided neural foramen at the C3-4 level moderately severe on the left

and mild on the right, but no disc protrusion extrusion was indicated. *Id.* at 164.

The ALJ also reviewed and rejected the recent findings and opinions of Dr. Kim, Plaintiff's treating physician. Dr. Kim had indicated in his November 6, 2003 attending physician's statement of disability that he began treating Plaintiff in 1999 and last examined him on October 6, 2003. He opined that Plaintiff was totally disabled for any occupation based upon diagnoses of multiple cervical spinal fusion with failed bony fusion and multiple cervical herniated discs. Tr. at 169. He stated his objective findings supporting these diagnoses as a positive Sperling sign on the left, limited range of motion in the neck, decreased sensation along the C5/C6/C7 and left wrist and elbow weakness. *Id.* The ALJ also reviewed Dr. Kim's January 20, 2004 assessment in which he diagnosed Plaintiff with cervical herniated discs, status post spinal fusion with failed surgery and MRI evidence for malunion and cervical radiculopathies. Tr. at 18, citing Tr. at 171. He opined that Plaintiff could not perform any lifting, carrying, pushing or pulling. *Id*. at 169.

Substantial evidence supports both ALJ Carissimi's decision finding that no significant changes had occurred to warrant the finding of a new RFC and his decision rejecting Dr. Kim's recent opinions and findings.

Here, the only MRI taken after ALJ Isbell's decision showed essentially unchanged degenerative changes from the 1996 MRI. Tr. at 164. The 2002 MRI indicated some bony hypertrophy at C3-4 and C6-7, but it was not causing any spinal stenosis. *Id.* And while this MRI also showed some foraminal narrowing at C3-4, with moderate severity on the left, Dr. Colombi, the neurologist to whom Dr. Kim referred Plaintiff, indicated that the disc had only "some very minimal foraminal compression" and Plaintiff did not fall into any surgical category with this C3-4 bulging disc. *Id.* at 167. In addition, Dr. Colombi had informed Dr. Kim in a June 24, 2002 letter that his

-7-

neurological examination of Plaintiff was "absolutely unremarkable," except for some diminished neck movement and some pain with neck movement. *Id.*

Dr. Kim, Plaintiff's treating physician, had indicated contrary neurological results and stated in an attending physician statement on November 6, 2003 that Plaintiff could not perform any occupation due to multiple cervical spinal fusion with failed bony fusion. Tr. at 169. He also opined on January 20, 2004 in an agency form that Plaintiff could perform no lifting, carrying, pushing or pulling due to diagnoses of cervical herniated discs, status post spinal fusion with failed surgery, MRI evidence for malunion, and cervical radiculopathies. *Id.* at 171-172. In support of his November 6, 2003 assessment, he indicated that Plaintiff had positive Spurling's sign on the left, limited neck range of motion, decreased left upper extremity sensory response and left wrist and elbow weakness. *Id.* at 169.

ALJ Carissimi rejected the findings and opinions of Dr. Kim. An ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record", unless that presumption is rebutted. *Wilson,* 378 F.3d at 544. When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency,

nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "'be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 *(quoting Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir.1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

ALJ Carissimi articulated good reasons for rejecting the findings and opinions of Dr. Kim and correctly attributed more weight to the findings and opinions of Dr. Colombi, the neurological specialist to whom Dr. Kim had referred Plaintiff. As ALJ Carissimi noted, Dr. Kim based his findings and opinions upon diagnoses of multiple cervical herniated discs, status post spinal fusion with failed surgery, MRI evidence of malunion and cervical radiculopathies. Tr. at 171. However, only one herniated disc was found at L3-4 on a May 29, 2002 MRI, and it was described by Dr. Colombi as a bulging disc at C3-4 with "some very minimal foraminal compression." *Id*. at 164, 167.

Dr. Colombi also found that Plaintiff's neurological examination was "absolutely unremarkable", except for some diminished movement in the neck and pain on movement of the neck. *Id*. He indicated that surgery would not relieve any of the pain associated with the C3-4 bulge. *Id.* Moreover, while a 1997 MRI had indicated a malunion of C5-6, Dr. Colombi had reviewed the most recent MRI of 2002 and concluded that there was a "solid fusion" of C5-6 and C6-7. Tr. at 112, 167. The June 24, 2002 letter by Dr. Colombi to Dr. Kim preceded Dr. Kim's completion of the statement of disability and the agency form in which he concluded that Plaintiff could not perform any lifting, carrying, pushing or pulling. In addition, Dr. Kim provided insufficient medical support or evidence to warrant his diagnoses which reflected conditions more severe than Plaintiff's condition.

For these reasons, ALJ Carissimi had substantial evidence to reject Dr. Kim's findings and opinions and to find that no significant change occurred in Plaintiff's condition in order to warrant a new RFC.

## **VI.**   **CONCLUSION**

For the foregoing reasons, the Court affirms the ALJ's decision denying Plaintiff SSI.


Dated: June 24, 2008                                  */s/George J. LImbert*
                                                              GEORGE J. LIMBERT
                                                              U.S. MAGISTRATE JUDGE